**SO ORDERED.**

**SIGNED this 1st day of April, 2025.**



_____
Dale L. Somers
United States Chief Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

**ANNIE SHIRLEY McGRUDER,**   Case No. 20-20758
                              Chapter 13

Debtor.

## Order Denying in Part Debtor's Motion for Determination of Postpetition Mortgage Fees, Expenses, and Charges and Award of Attorney Fees and Expenses Pursuant to [Rule] 3002.1

After receiving a pay-off quote from Creditor Equity Bank, Debtor Annie Shirley McGruder filed a motion to determine post-petition fees, arguing Equity had not provided adequate notice of the assessed fees and

1

costs as required by Fed. R. Bankr. P. 3002.1,[1] and the fees, amounting to at least $20,000, were unreasonable and excessive. The sole issue for this order is whether Equity, upon incurring the fees and costs, was required to provide notice to Debtor pursuant to Rule 3002.1.

The Court concludes Equity was not required to comply with Rule 3002.1 because Debtor's confirmed Chapter 13 plan, which proposed to pay Equity's claim in full, did not provide for contractual installment payments as required to come within that Rule. [2] The remaining issue of the reasonableness of said fees will be decided separately.

I. **Findings of Fact and Procedural History**[3]

On August 15, 2012, Debtor executed a promissory note in favor of Equity in the principal amount of $100,000 to purchase real property located at 8344 Yecker Avenue, Kansas City, Kansas 66109. The note is secured by a mortgage held by Equity, and both were recorded with the Register of Deeds of Wyandotte County, Kansas, on August 15, 2012. Under the terms of the

---

[1] Future references to the Federal Rules of Bankruptcy Procedure will be to "Rule" only. All statutory references herein are to the Bankruptcy Code, title 11, unless otherwise specified.
[2] Debtor appears by counsel Nancy L. Skinner, and Equity appears by counsel John M. Molle.
[3] The Court gathered its facts from the parties' Joint Stipulation of Facts (Doc. 92) and the docket in this bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).

mortgage contract, Debtor was required to make monthly principal and interest payments of $599.55 at six percent per annum.

Pursuant to a "Change in Terms Agreement," the maturity date of the note was extended from August 15, 2017, to December 15, 2017, at which point a final balloon payment of all amounts owed under the note would become due and payable.

On the maturity date, Debtor failed to pay the outstanding and unpaid amounts owed and was thus in default on the note.[4]

On May 15, 2020, Debtor filed her Chapter 13 petition and proposed Chapter 13 plan. As set forth in the plan, Equity's claim would be modified and treated as a debt secured by a real-estate lien under § 1325(a)(5)(B)[5] and paid in full through the plan at the Trustee's discount rate in effect on the petition date (unless the contract rate was lower, in which case the claim would be paid at the contract rate). The plan further provided:

---

[4] Neither party establishes what the total amount due and payable was on the note's maturity date.

[5] Although § 1322(b)(2) would otherwise prevent Debtor from modifying Equity's claim, which is a claim "secured only by a security interest in real property that is the debtor's principal residence," subsection (c)(2) provides an important exception to (b)(2): "in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is *due before* the date on which the final payment under the plan is due, the plan may provide for payment … as modified pursuant to section 1325(a)(5)." (emphasis added). Section 1325(a)(5)(B) provides, in relevant part, that a court shall confirm a plan if, "with respect to each allowed secured claim … the plan provides that—the holder of such claim shall retain the lien … until the earlier of—the payment of the underlying debt … or discharge under section 1328[.]"

3

> Mortgage creditor shown above shall be paid an [estimated monthly amount] of $988.00 per month toward the balance on the claim filed by Creditor. All amounts remaining due at the completion of the case shall be paid upon completion of this plan by refinancing the existing indebtedness, which should be possible at that time given the equity in the property.

Debtor's Chapter 13 plan was confirmed without objection on July 17, 2020.

Shortly after confirmation of the plan, on July 24, 2020, Equity filed its Proof of Claim No. 9, indicating the total outstanding balance on its claim was $111,949.05, including principal of $82,982.28, interest of $9,300.78, fees and costs of $18,786.15, and escrow deficiency for funds advanced of $879.84. About a year and a half later, on January 11, 2022, Equity amended its Claim No. 9, indicating the escrow deficiency for funds advanced had increased from $879.84 to $8,669.94 and its fees and costs due had marginally increased from $18,786.15 to $18,832.40.

Soon after that amendment to the Equity proof of claim, on February 11, 2022, Debtor filed a motion to modify the confirmed plan to address the missed escrow payments.[6] In the motion, Debtor proposed that her payments would increase from $988 to $1,300 per month, and would be applied:

- $599.55 per month toward principal and interest,

---

[6] The impetus for the motion to modify was likely Equity's motion for relief from stay and motion for adequate protection payments. In both motions, Equity argued Debtor had failed to pay taxes and assessments on the property and Equity had to advance funds to protect its interest in the property. Because the motion to modify resolved the issues, Equity's motions were subsequently denied.

4

- $303.00 per month towards current ongoing county property taxes paid to Wyandotte County, and
- $397.45 per month first towards the missed December 2020 property tax payment in the amount of $1,750.88, then towards the $8,669.94 prepetition escrow shortage, then towards principal and interest.

An agreed order granting the motion to modify was entered on March 8, 2022.[7]

More than two years passed. On July 9, 2024, Debtor filed a motion to determine post-petition mortgage fees and expenses under Rule 3002.1. In the motion, Debtor claims she received a pay-off quote from Equity as part of her refinancing process. The pay-off quote stated Equity had incurred and assessed $24,933.47 in post-petition fees. Debtor disputed the assessed fees, arguing Equity had not filed a notice of such fees as required by Rule 3002.1, and the fees were otherwise unreasonable and excessive. In response, Equity filed a motion for allowance of post-petition fees and costs, seeking, what appears to be, solely post-petition attorney's fees and costs incurred from June 2020 to June 2024 (with the majority incurred between 2021 and 2022) in the amount of $20,929.75.[8]

---

[7] The Court, when referring to "the plan" from this point forward, is referring to the modified plan. *See* 11 U.S.C. § 1329(b)(2) (the modified plan "becomes the plan unless, after notice and a hearing, such modification is disapproved.").

[8] To its motion, Equity attached an invoice from its counsel's law firm, the Molle Law Firm, LLC, that identified the fee amounts and dates incurred. There is some confusion as to the amount of post-petition fees Equity seeks (i.e., Debtor asserts approximately $24,000 whereas Equity seeks approximately $20,000); however, the Court will not decide that issue in this order.

5

At the status conference, the parties agreed the Rule 3002.1 issue needed to be addressed first because that determination would impact the Court's reasonableness inquiry. Thus, the Court asked the parties to provide supplemental briefing in support of their respective positions on only the Rule 3002.1 issue.

In her brief, Debtor takes the position that Rule 3002.1 applies because the confirmed plan provided for "contractual installment payments" as the plan incorporates her $599.55 contractual principal and interest payment into the $1,300 total monthly payment to Equity. Equity disagrees, arguing the plan did not provide for payments in accordance with the contract but instead altered the contract by allowing payments to continue past the loan's contractual maturity date and altering the amounts due.

## II. Conclusions of Law

Rule 3002.1 "applies in a Chapter 13 case to a claim that is secured by a security interest in the debtor's principal residence and for which the plan provides for the trustee or debtor to make contractual installment payments."[9] The Rule therefore has two parts: it applies when: (1) a claim is

---

[9] Fed. R. Bankr. P. 3002.1(a). As originally enacted in 2011, Rule 3002.1 provided it applied to principal residence loans that were "provided under" § 1322(b)(5), leading some courts to conclude that it only applied if the debtor's plan "clearly 'provided for' the claim under that section, and only if the debtor had a prepetition arrearage that was being cured under the plan." 9A *Collier on Bankruptcy* ¶ 3002.1.01 (Richard Levin & Henry J. Sommer eds., 16th ed.). In 2016, Rule 3002.1 was amended to eliminate the reference to § 1322(b)(5), making it clear that the rule

6

"secured by a security interest in the debtor's principal residence," and (2) the "plan provides for the trustee or debtor to make contractual installment payments." If applicable, the Rule then requires timely disclosure of account information regarding a debtor's residential mortgage during a Chapter 13 case to allow the trustee or the debtor to challenge the new charges and, if necessary, adjust the post-petition mortgage payments to cover the charges and prevent a default.[10] Specifically, Rule 3002.1(c) provides:

> The claim holder must file a notice itemizing all fees, expenses, and charges incurred after the case was filed that the holder asserts are recoverable against the debtor or the debtor's principal residence. Within 180 days after the fees, expenses, or charges were incurred, the notice must be served on: the debtor, the debtor's attorney, and the trustee.[11]

The parties do not dispute that Equity is a secured creditor with a secured claim on Debtor's principal residence. Rather, the sole issue presented here is whether Debtor's confirmed plan provided for "contractual installment payments." If it did, most of Creditor's assessed fees, namely those incurred between 2021 and 2022—far more than 180-days ago, would

---

applies even if there "is no prepetition arrearage to be cured." Fed. R. Bankr. P. 3002.1(a) advisory committee's notes to 2016 amendment; *see also In re Legare-Doctor*, 634 B.R. 453, 458 (Bankr. D.S.C. 2021) (discussing the 2016 amendment).
[10] Fed. R. Bankr. P. 3002.1(a) advisory committee's notes to 2016 amendment; *see also* 9A *Collier on Bankruptcy* ¶ 3002.1.01; *see generally In re Roper*, 621 B.R. 899, 901 (Bankr. D. Colo. 2020) (The noticing requirements under Rule 3002.1 serve to prevent the unfortunate situation in which a secured creditor "silently accrue[s] additional amounts and then spring[s] a 'gotcha' foreclosure after the debtor has completed her plan and emerged from bankruptcy protection.").
[11] Fed. R. Bankr. P. 3002.1(c).

come within the notice requirements of Rule 3002.1(c), and any notice now would be untimely.

Although neither Rule 3002.1 nor the Bankruptcy Code defines the phrase "contractual installment payments," the Advisory Committee Notes make it clear the Rule applies "whenever a chapter 13 plan provides that *contractual* payments on debtor's home mortgage will be *maintained*[.]"[12] If, however, a secured creditor's claim is otherwise modified by the confirmed plan, the secured creditor is said to have lost the "benefit of its original contract negotiated with the debtor" as the confirmed plan, pursuant to § 1327(a), becomes the modified contract between the debtor and creditor,[13] and the plan payments to the creditor are not contractual installment payments as the original contract is no longer adhered to.[14]

---

[12] Fed. R. Bankr. P. 3002.1 advisory committee's notes to 2016 amendment (emphasis added).
[13] Section 1327(a) provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." It is well-settled that an order confirming a Chapter 13 plan "'represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack.'" *In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997) (quoting 8 *Collier on Bankruptcy* ¶ 1327.02[1]).
[14] *White v. NewRez LLC (In re White)*, 641 B.R. 717, 724-25 (Bankr. S.D. Ga. 2022) (following the bifurcation of a secured creditor's claim under §§ 1322(b) and 506(a), "the debtor's plan payments to the affected secured creditor are not contractual installment payments"); *In re Legare-Doctor*, 634 B.R. at 460 (holding the plan provided for contractual installment payments as it provided for repayment of tax and insurance advances the debtor was "contractually obligated to repay" under the

8

Here, Debtor's plan does not purport to cure arrearages and maintain ongoing mortgage payments in accordance with the original contract. It instead provided for payment in full on Equity's claim over the life of the plan (through $1,300 monthly payments and refinancing the mortgage). This payment structure is thus separate and distinct than the one contemplated by the underlying contract; therefore, Debtor's plan does not provide for contractual installment payments.[15]

The authority cited by Debtor does not impact this conclusion. Debtor cites to *In re Legare-Doctor*, in support of the proposition that Rule 3002.1 would apply here because a portion of her plan payments are "for tax advances."[16] She then distinguishes the holdings in two cases, *In re Ogar*[17] and *In re White*,[18] arguing that, unlike in those cases, Rule 3002.1 should apply here because her plan provides for monthly payments to Equity, not pro rata payments as the plan in *Ogar*, and does not cram down Equity's claim under § 506(a), as the plan proposed in *White*.

---

reverse mortgage and further provided that the debtor would maintain those payments as they become due).
[15] *In re Anderson*, No. 15-41155, 2020 WL 6821796, at *7 (Bankr. D. Kan. Nov. 16, 2020) (holding the plan did not provide for contractual installment payments as it instead provided for full payment of a secured creditor's claim treated under § 1325(a)(5)(B)).
[16] *In re Legare-Doctor*, 634 B.R. at 460.
[17] *In re Ogar*, No. 18-32182 (Bankr. S.D. Tex. May 25, 2021) (order denying motion for reconsideration) (Doc. 74).
[18] *In re White*, 641 B.R. at 724.

However, Debtor's reliance on those cases is unfounded as none of the three cases provide support to Debtor's argument. Instead, all three cases applied the framework discussed herein by the Court, focusing on the respective plan's proposed treatment of the secured creditor's claim and whether said treatment was in accordance with the original contract and not, as Debtor does, on identifying the surface-level nature or character of the payments provided for under the plan.[19]

## III. Conclusion

The Court concludes Rule 3002.1 does not apply to Equity's claim, as Debtor's confirmed plan did not provide for contractual installment payments. The Court therefore denies that portion of Debtor's motion objecting to Equity's claim under Rule 3002.1 and denies Debtor's request for fees and costs under that Rule.[20]

---

[19] In *Legare-Doctor*, the court held that the plan provided for contractual installment payments because the plan provided for the cure of past tax and insurance advances and the maintenance of future tax and insurance payments, which the debtor was contractually obligated to repay. *In re Legare-Doctor*, 634 B.R. at 460. In *In re Ogar*, the court held that Rule 3002.1 did not apply because the creditor's claim, which the court found was a claim secured by the debtor's homestead, was treated as a "total debt" claim under the plan in which the trustee was directed to make pro rata payments. *In re Ogar*, No. 18-32182 (Bankr. S.D. Tex. May 25, 2021) (order denying motion for reconsideration) (Doc. 74). In *In re White*, that court held Rule 3002.1 did not apply because the plan bifurcated the secured creditor's claim under § 506 and thus, the plan payments were not contractual installment payments. *In re White*, 641 B.R. at 725.

[20] Doc. 79. Per Rule 3002.1(i)(2), if a claim holder fails to provide information required by the Rule, a court may award "appropriate relief, including reasonable expenses and attorney's fees caused by the failure."

The remainder of Debtor's motion concerning the reasonableness of the fees in Equity's claim,[21] and Equity's motion for allowance of its postpetition fees and costs,[22] will be set for a status hearing on April 17, 2025, at 1:30 p.m.

**It is so Ordered.**

# # #

---

[21] Doc. 79.
[22] Doc. 83.